Good morning everyone and welcome to this morning's calendar of the Ninth Circuit. We're pleased to be here in Hawaii and look forward to hearing argument from all of you. One matter was submitted on the briefs, Skydiving School v. Go Jump America. The other four cases will be argued and we'll begin with our first case, which is Case 23-2788, Ricardo Velarde Osuna v. Bondi. Good morning. May it please the Court, my name is Manuel Dionis. I represent the petitioner Ricardo Velarde Osuna. This case is about the agency's legal error in failing to apply the delayed awareness provision of 8 CFR Section 208.4a. Because the petitioner only became aware of the threats to his family in June of 2019, his asylum application was timely under the changed circumstance exception. If the applicant can establish that he or she did not become aware of the changed circumstance until after the occurred, such delayed awareness shall be taken into account in determining whether it constitutes a reasonable period. The Ninth Circuit has previously remanded cases where the BIA failed to correctly apply this standard, as in Malte v. Ashcroft 2004 case. That's one of the primary reasons that we're asking for this Court to remand the cases in both the Immigration Judges' Decision and the Board of Immigration Judges' Decision. You say that your client learned of the new events in June 2019, but the agency said June 2018. So is your argument that the agency just was mistaken on this point? Yes, Your Honor. The incident that led to the asylum claim occurred in June of 2018. The Immigration Judge in its decision said that there's nothing in the record that states that the credibility of the petitioner or the witnesses were in doubt. Is this just a purely factual argument then, this part of your presentation, that the BIA said June 2018, you say June 2019? Is that just a factual difference? Because if it is, I think there's then the question about whether we have jurisdiction to look at that if it's purely factual. It may be a question, too, if it's not purely factual. But if it is purely factual, how do you get around some of these jurisdiction stripping provisions? Your Honor, the Immigration Judge does not – it's not clear on whether – and he makes it also in his own decision. He does not make it clear whether the first instance of when the petitioner first learned of the exact circumstances that led to his asylum claim was actually in June of 2019. What he is – what he does say in the certified administrative record – and yes, I am also arguing that there is this factual dispute with regards to what the judge found in terms of the testimony. But there was nothing in the Immigration Judge's decision that does not say that it didn't occur in June of 2019. Well, I mean I don't know about that. He – the Immigration Judge, I'm looking at the decision, references the testimony and says this communication occurred around June of 2019. And then the Immigration Judge goes on to say that that was beyond what the court would find as reasonable in terms of the delay. So it seems that the Immigration Judge was working off of June of 2018, don't you think? Yes, Your Honor. And it is also something that we are – I am arguing that this is a factual – the finding of the judge was an error because the numerous testimony provided by the brother, Ismael, by the daughter, Ms. Mendez, and the petitioner himself, which is not disputed, it clearly indicates the first time that he first learned of it was during a discussion that occurred in May or June of 2019. The judge does not – Immigration Judge does not dispute this. He doesn't say his credibility is at issue. Do we have jurisdiction to look at this? I mean, the Ramadan case, which the government has raised – I mean, in that case, the facts were undisputed. And we have a provision in the asylum law that says no court shall have jurisdiction to review any determination of the attorney general under paragraph two, and that's referencing the changed circumstances provision. So there's some question as to what that means, but even under our current Ninth Circuit law, is there a basis to review a purely factual determination like the one we're discussing? Yes, Your Honor. I would argue that the facts of this case, it's been left up. It's not as if it's undisputed. There are facts that the Immigration Judge even states in his own decision that it's unclear. If it was unclear, he should have addressed it. Well, he did say that it was – the application wasn't filed within one year of the changed circumstance, which means he had to be talking about June of 18. So, I mean, that's a finding. Yes, Your Honor. And we are – and it goes back – and I understand that, Your Honor. And it goes back to my argument that there was this failure to consider this delayed awareness provision, which would have meant if he had addressed it, he would have understood that June 2019 would have been the first time that – or the date that the asylum application should have been considered. Meaning that is when the discussion with the brother first occurred, Your Honor. Going further, Your Honor, with regards to the Magana-Magana v. Garland, we are making a distinction between that case where Magana-Magana involved a discretionary determination, whereas our case presents a legal or failure to apply a binding regulation. And I believe this case actually works in our favor. With regards to withholding of removal, even if asylum was time barred, petitioner would have been eligible under 8 U.C. Section 1231. His brother was physically attacked and threatened with death, an organized criminal group. The Ninth Circuit has held that a persecution based on family membership is cognizable in Garcia v. Holder, a 2014 case. Therefore, at a minimum, the case should have been remanded for consideration of – should be considered for withholding of removal. You mentioned a moment ago trying to distinguish Magana-Magana. You said there's a legal issue here referencing compliance with the regulation. So what is the legal question that you think was – there was error here. We talked about something that sounded more factual to me, but what's the legal question? The legal question is in terms of the discretionary decision, the one-year – whether the exception to the one-year filing deadline applied was the failure to consider HCFR Section 208.48. About the reasonable time period? Yes, Your Honor. Okay. What was the legal error there? The legal error was that it was not considered at all. The delayed awareness provision and the immigration judge – there's an absence of that discussion in the immigration judge's oral decision. There's an absence of that discussion in the BIA's decision. And so it was not considered at all, Your Honor. The BIA – excuse me, the IJ referenced the June 2018 date and then said it wasn't a reasonable time. So I'm not sure if the IJ cited the regulation, but the IJ seemed to be thinking about this in the way you are in terms of whether this delay was reasonable. And I believe – I am unsure if it was actually discussed by the judge, but from a review of the immigration judge's decision, it's not cited to at all. So I'm unsure at least that would – clarity with regards to that consideration should be made. And that consideration in terms of remanding it to the immigration judge to make it clear whether this was a consideration made on his part. We're running close on your time, but why don't we put two minutes for you up on rebuttal and we'll hear from your opposing counsel. Thank you. Thank you. Good morning, Your Honors. My name is Julie Iverson, and I represent the United States. As an initial matter, this case presents the court the opportunity to revisit its precedent in Ramadan and its progeny in which this court – Why does it? I mean, it's a disputed fact case. Yes. That isn't at the end of the argument on Ramadan. Pardon me, can you – Isn't that the end of it? Well, I wanted to address the Supreme Court's recent decision in Wilkinson. No, I understand that, but I mean, why do we get there if it's a disputed fact case? If it's a disputed fact case – so the court – the government urges the court to revisit Ramadan, but if it chooses not to, then it's a disputed fact case. Yeah, I'm sorry. The facts are in dispute in petitioner's brief, appellate brief to the board. So what is the application of odd effect here that creates the issue? I mean, it's a factual dispute. The dispute would be when he learned of the circumstances that he used for the basis of his asylum application, which would be the incident where his brother was harmed. Right. So if it's a win question, that's a fact. If it's in dispute, then the court would lack jurisdiction over the one year. Right. Yes. And so if the court – the government would win on that basis. I want to direct the court to page 29 of the record, which is the appellate brief that petitioner filed with the board. And in that brief, he said, although Velarde became aware of the circumstances underlying his asylum claim in June of 2018, he did not retain an immigration attorney until his detention and the commencement of removal proceedings in July of 2019. So he seems to concede that he learned of the circumstances in June of 2018 when he was appealing to the board. But he doesn't concede that. Now he seems to renew. No, I mean, that's the whole issue. Yes. And actually, when you look at the IJ decision, the IJ is making a factual determination. He goes through the evidence, and he said only then did it become clear, and then he uses the 19 date. So he's resolving facts. The facts resolve the issue of changed circumstances. I'm not sure I understand how we get to a mixed question of fact and law in this case. Well, the government urges the court to revisit Ramadan because the government contends that there's no discretion, that the court lacks jurisdiction completely in light of Wilkinson v. Garland, in which the Supreme Court indicated that a provision that includes the language to the satisfaction of the attorney general is a discretionary determination insulated from the court's review. Right. There are two problems we have. One is, as a three-judge panel, we have to absolutely be convinced that it's irreconcilable, and I'm not sure I'm convinced of that. And two, there are other cases that have priority on this question for us. In Miller v. Gammy, Your Honor, the court recognized that a prior decision may have been undercut by a higher authority to such an extent. Irreconcilable, I think, is the language. That has been effectively overruled by such higher authority and hence is no longer binding. Yes. We're well familiar with Miller v. Gammy. So we would urge the court to revisit that, but the court, in order to decide this case, need not revisit it if it chooses to just apply the Ramadan precedent. And here the facts are disputed, and the court would lack jurisdiction under Ramadan to review disputed facts. Or the application of law to dispute the facts. That would seem to be the evident implication of Ramadan, that if the facts are disputed, we do not have jurisdiction to resolve that. Has the court said that in a published case, or is that just how we've treated this as an interpretation or inevitable reading of Ramadan? I think it probably has said that in a published case, but I just know that Ramadan was the application of that the facts in that case were undisputed. So I'm sure it has, but I don't have the case right now.  I mean, Ramadan said that most cases are going to be resolved on a factual basis, and we lack jurisdiction. And, in fact, that's true in practice. I mean, there are very few pure Ramadan mixed questions that have resulted in a grant, and the few I think of, the government conceded. So, I mean, the mixed question issue in Ramadan just doesn't come up that often because it has to be completely undisputed facts and a misapplication of law. So, Your Honors, we contend that the court would lack jurisdiction under Ramadan over the one-year determination because here the facts are clearly in dispute, given that there are some inconsistencies about when he learned of the incidents that formed the basis of his untimely asylum application. With respect to the withholding application, in order to prevail in this petition, he'd have to show that the record compels a contrary conclusion to that reached by the agency, that he would likely be persecuted in Mexico. He's been in the United States for 20 years. There's no evidence that anyone's interested in him. His siblings have been able to remain unharmed in Mexico. His brother, who was initially harmed, has been unharmed for the past two years, or the two years preceding the merits hearing. So he just has not shown that the record compels a contrary conclusion that he would likely be persecuted in Mexico. Additionally, he's also not shown that the record compels the conclusion that he likely would be tortured by a public official in Mexico or with the consent of public officials in Mexico. He hasn't shown a particularized risk of harm, a particularized risk of torture in Mexico. Can I ask, even though it may not be necessary to reach it in this case, back to your Wilkinson position, the Supreme Court has held that a number of these standards that some courts had thought were purely discretionary are, in fact, mixed questions and that we have jurisdiction to review them. And so the argument here would turn on the addition of this further discretionary language to the satisfaction of the attorney general. Why do you think that makes a difference? I mean, there is a passage in Wilkinson that references this, but just as a kind of textual matter, why does this make a difference? I think that the court, just the reference of it, they referenced it specifically. And so if it's going to mean something, it has to mean something in this case where they actually use the same exact language that the Supreme Court used in Wilkinson. In Wilkinson, it was a cancellation of removal hardship case, and they were looking at the standard, applying the standard to establish a set of facts. And they were distinguishing it from the predecessor suspension of deportation standard in which there had been discretionary language. And they said the omission of that discretionary language by Congress indicated that they had not meant to make the cancellation of removal hardship standard discretionary. They also referenced two waivers of admissibility, which included the exact same language that is at issue in this statute, the satisfaction of the attorney to the satisfaction of the attorney general language. The odd thing, though, in Wilkinson is I think it was a sea change because we had jurisdiction over these kinds of cases under the prior statute with suspension of deportation and then didn't. And so nobody really questioned whether we all said we don't have jurisdiction. The Supreme Court said, no, no, no, you do have jurisdiction over that. And to me, change circumstances is actually maybe a stronger case for having jurisdiction over mixed questions of law and fact. The example that I've given is let's say the facts are undisputed that, in fact, it was timely. And the attorney general or the IJ says, no, it wasn't timely. Just completely wrong. And your argument, if carried to its logical conclusion, is that it doesn't matter if the IJ and the BIA misapplied the law to undisputed facts. Well, then I would say why did the Supreme Court include the discussion involving to the satisfaction of the attorney general? Right. But it seems to suggest that the language of the provision matters. Yeah. The problem with that, applying Miller v. Gamey, is that it has to be entirely irreconcilable. And that's kind of a throwaway in the Supreme Court opinion. It's not a holding. I mean, I take your point. Don't get me wrong. But, I mean, to overturn precedent seems to me more than that. Because I think if squarely presented with the right issue on change circumstances, my guess is given Wilkinson, the Supreme Court might go the other way. Well, our position is different. I know your position is different. Counsel, so I was also a little bit confused as to why you were asking at this instance that we overturn Ramadan when the facts don't really line up the same way. I understand Wilkinson. I understand that the language that we're discussing here to the satisfaction of the attorney general, I know that we have that language here, but we have disputed facts here. The question is, and I mean, you've kind of conceded that, that we wouldn't have jurisdiction anyway. So I'm not sure why you picked this case to ask us. I think we're preserving the argument in these cases. If the court would like to revisit Ramadan in light of Wilkinson, in which the government feels has illuminated what provisions are subject to jurisdictional bars, and if the court would like to harmonize its case law with Wilkinson and with the other circuit courts who have decided the issue, then we urge the court to do so. Alternatively, if the court lacks jurisdiction to review the application of law to disputed facts, which the facts seem to be disputed in this case. Okay. Thank you. Thank you so much, Your Honors. Counsel, why don't you have a seat, counsel? We're not done, counsel. Stay at the counsel table, please. Thank you. Go ahead with your rebuttal. I'll keep it brief so she can catch her flight. Your Honor, I believe you have addressed a lot of the issues that I had in mind. The arguments that opposing counsel had brought up in regards to relocation. Relocation is neither safe or reasonable for the petitioner when the organization is a countrywide cartel with regards to the disputed facts for this case. We are arguing that the facts that the immigration judge had applied was incorrect. And in conclusion, Your Honor, we are asking that this be remanded with regards to at least the legal errors that are reviewable under 8 U.S.C. section 1252 with regards to failure to address the 8 CFR section 2.4. Thank you. Thank you very much. Thank both counsel for the arguments. This matter is submitted.
judges: THOMAS, BRESS, ALBA